**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| JOSEPH CHURCH, | ) | CASE NO:   1:10-cv-1399 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | NANCY A. VECCHIARELLI |
| CITY OF CLEVELAND *et al.*, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendants. | ) | Doc. No. 25 |

This case is before the undersigned United States Magistrate Judge pursuant to referral.  (Doc. No. 13.)  Defendant, Sergeant James M. Mishic ("Mishic"), has moved for summary judgment (Doc. No. 25), and Plaintiff, Joseph Church ("Church"), opposes (Doc. No. 27).  For the reasons set forth below, the Magistrate Judge recommends that Defendant Mishic's Motion for Summary Judgment be GRANTED.

### I.     BACKGROUND

**A.     Factual Background**

The following material facts are not in dispute.[1]  On July 13, 2008, Cleveland

---

[1] The following facts have been developed from the Complaint; from affidavits that Mishic has presented with his Motion for Summary Judgment and that Church has not contested; and from Church's admissions that have been entered by default pursuant to Federal Rule of Civil Procedure 36(a)(3)

Police arrived at Church's residence in response to a call from Church's neighbor, who reported being threatened by Church with a gun because the neighbor's dog had defecated in Church's yard. (Compl. ¶ 2; Anthony J. Longer Aff. ¶ 2.) Church gave the police his gun—a Glock, Model 26, semi-automatic 9mm handgun—upon request. (Compl. ¶ 3; Longer Aff. ¶ 4.) The police then arrested Church in relation to the dispute. (Longer Aff. ¶ 4.) Church was charged with misdemeanor aggravated menacing, and the police kept Church's gun for investigation. (Longer Aff. ¶ 4; Aric Kinast Aff. ¶ 2.) On March 4, 2010, however, the charge against Church was dismissed by the prosecutor *nolle prosequi*. (Kinast Aff. ¶ 3.)

Church's gun was held in the Property Unit of the Cleveland Police Department's Bureau of Administrative Services Property Section. (Valerie Mone Aff. ¶ 2; *see* Debra Cavett Aff. ¶ 2.) This lawsuit arises out of Church's inability to receive his gun from the Property Unit. (Compl. ¶ 9.) The Property Unit's standard operating procedure for releasing a confiscated firearm to its owner is as follows.

The release of a firearm from the Property Unit is not guaranteed. (James M. Mishic Aff. ¶ 2.) A Confiscated Weapons Check form must first be completed. (Mishic Aff. ¶ 2.) The person requesting the release of his gun must also present sufficient proof of identification and ownership of the gun in question. (Mishic Aff. ¶ 2.) The Confiscated Weapons Check form, proof of identification, and proof of ownership are then forwarded to a supervisory officer along with the initial incident report for the incident in which the gun was involved, and with the Property Unit's "gun return request

---

because Church failed to respond to Mishic's Request for Admissions.

book." (Mishic Aff. ¶ 2.)  The supervisory officer then considers all the information, as well as federal, state, and local laws, before deciding whether to release the gun to its requesting owner.  (Mishic Aff. ¶ 2.)

On or about October 3, 2008, Church presented to the Property Unit to receive his gun.  (Mone Aff. ¶ 4; Compl. ¶ 7.)  Patrol Officer Valerie Mone engaged Church at the Property Unit.  (Mone Aff. ¶ 4; see Mishic Aff. ¶ 6.)  Patrol Officer Mone did not begin processing the release of Church's gun at that time because Church was unable to provide sufficient proof of identification, ownership of the gun, and gun registration with the City of Cleveland.  (Mone Aff. ¶ 4.)

On or about January 14, 2009, Church returned to the Property Unit to receive his gun.  (Mone Aff. ¶ 5; Compl. ¶ 10.)  Church presented adequate proof of his identity and ownership of his gun, but refused to register the gun with the City of Cleveland. (Mone Aff. ¶ 5.)  Patrol Officer Mone began processing the release of Church's gun by filling out a Confiscated Weapons Check form, but warned Church that his refusal to register his gun with the City of Cleveland might affect the Cleveland Police Department's decision to release his gun.  (Mone Aff. ¶ 5.)

Mishic was the Officer-in-Charge of the Property Section's Forfeiture Unit at the time Church requested that the Property Unit release his gun, but Mishic was also responsible for determining whether firearms should be released from the Property Unit. (Cavett Aff. ¶¶ 2, 4.)  Mishic never met Church in person until after this litigation was initiated.  (Mishic Aff. ¶¶ 6, 7.)  On or about January 27, 2009, Mishic reviewed Church's request for the release of his gun but recommended that Church's gun not be released at that time for three reasons:  Church was not in compliance with the City of

3

Cleveland's registration requirement pursuant to the City of Cleveland's Codified Ordinance § 674.05;[2] Church did not obtain a court order for the release of his gun

---

[2] The City of Cleveland's Codified Ordinance § 674.05 provides the following:

> (a) Application for a handgun registration card shall be made in writing by the person claiming to be the owner of the handgun to be registered at any office where identification cards may be issued under Section 674.04. The application shall be accompanied by an application fee of two dollars ($2.00) for each handgun to be registered, which shall be paid into the Treasury of the City, with separate accounting made for it. When satisfied that the applicant holds a valid identification card and is not in that class of persons prohibited from holding the same, a registration card shall be issued to the applicant no sooner than three (3) days and no more than sixty (60) days after the date of application.
>
> (b) All registration cards issued under this section shall be entitled "City of Cleveland, Ohio, Handgun Registration Card"; be serially numbered according to a system devised by the Chief of Police; bear date of issue, the name of the Chief of Police, the applicant's name, home address, identification card number, the signature of the applicant; and contain the name, type, caliber, and serial number of the handgun. A copy of each registration card shall be retained by the Chief, together with a copy of the application, which documents shall be maintained on permanent file by the Chief and shall not be deemed a public record nor be disclosed to unauthorized persons.
>
> (c) Any person who sells or otherwise transfers possession of a registered handgun shall, within five days of the date of transfer of possession of the handgun, surrender the registration card for the handgun with the name, address, or social security number, and identification card number, if required by law, of the buyer endorsed on it, to any office where identification cards are issued, and obtain a receipt for it. The office receiving the same shall immediately cancel the registration card.

C.C.O. § 674.05, *available at* http://caselaw.lp.findlaw.com/clevelandcodes/cco_part6_674.html (last visited Feb. 7, 2011).

4

pursuant to the City of Cleveland's Codified Ordinance § 627.11(a);[3] and Church's criminal case was still pending. (Mishic Aff. ¶ 8.) Although a Detective who apparently was involved with investigating Church's criminal charge sent a form to the Property Unit on September 29, 2008, requesting that Church's gun be released because Church was not charged for carrying a concealed weapon without a permit (Pl.'s Ex. A; Mishic Aff. ¶ 9),[4] the Property Unit's standard operating procedure indicates that the request was not determinative of whether the gun should ultimately have been released to Church (Mishic Aff. ¶ 2).

### B. Procedural Background

On May 14, 2010, Church filed his Complaint *pro se*[5] in the Cuyahoga County Court of Common Pleas alleging that the City of Cleveland and Mishic converted his

---

[3] The City of Cleveland's Codified Ordinance § 627.11(a) provides the following:

> (a) In any situation where a deadly weapon is present and a person has been drinking or disturbing the peace, threatening bodily harm or causing or threatening a disturbance or violence, and there is reasonable cause for the investigating police officer to believe that such deadly weapon may be used to cause bodily harm, such deadly weapon may be seized by the police and kept in the custody of the Chief of Police until released by an order of a court of competent jurisdiction.

C.C.O. § 627.11(a), *available at* http://caselaw.lp.findlaw.com/clevelandcodes/ cco_part6_627.html (last visited Feb. 7, 2011).

[4] Church suggests that the Detective who submitted the release request form had submitted the form because the investigation of Church in relation to the charge against him was completed. The form provides the following: "The reason for the release of this property is: MR. CHURCH WAS NOT CHARGED WITH CCW AND HAS A PERMIT . . . TO CARRY THE ABOVE MENTIONED FIREARM." (Pl.'s Ex. A.)

[5] Church is a lawyer but is presently suspended from the practice of law in Ohio.

gun,[6] and violated 42 U.S.C. § 1983 by depriving him of his "rights to carry a weapon" under the Second Amendment to the United States Constitution, and depriving him of his property without due process under the Fifth and Fourteenth Amendments to the United States Constitution. On June 23, 2010, the defendants removed this case from state court to federal court. (Doc. No. 1.)

On July 30, 2010, the defendants filed a Partial Motion to Dismiss (Doc. No. 5), and Church opposed (Doc. No. 7). On October 26, 2010, the Magistrate Judge issued a Report and Recommendation recommending that the defendants' motion be granted in part and denied in part. (Doc. No. 17.) The District Judge adopted the Magistrate Judge's Report and Recommendation, as the District Judge agreed with the Magistrate Judge's analysis and Church did not object. (Doc. No. 20.) The only counts that survived the defendants' Partial Motion to Dismiss were Church's § 1983 and conversion claims against Mishic. (Doc. Nos. 17, 20.)

On December 13, 2010, Mishic filed his Motion for Summary Judgment. (Doc. No. 25.) Church failed to respond; therefore, on January 24, 2011, the Magistrate Judge issued an Order requiring Church to respond to Mishic's Motion on or before Friday, January 28, 2011, lest he be precluded from filing any response to the motion. (Doc. No. 26.) On January 27, 2011, Church filed his Brief in Opposition to Mishic's

---

[6] Church alleges in his two-sentence fact section of his Brief in Opposition that Count One of his Complaint alleged a violation of Ohio Revised Code § 2923.163. This is inaccurate, as Count One of his Complaint does not cite this statute, but rather alleges that Mishic converted Church's gun. Moreover, in this Court's prior Report and Recommendation, this Court treated Count One as an allegation of conversion, (Report & Recommendation 10/26/10, Doc. No. 17), the District Judge agreed (Mem. Op. & Order 11/23/10, Doc. No. 20), and Church never objected (*see* Mem. Op. & Order 11/23/10, Doc. No. 20).

6

Motion. (Doc. No. 27.) On February 7, 2011, Mishic filed his Reply to Church's Brief in Opposition. (Doc. No. 28.)

## II. LAW & ANALYSIS

### A. Standard of Review

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party can meet this burden in two ways: by presenting sufficient evidence to indicate there is no genuine issue of material fact; or by arguing that the nonmoving party, after adequate time for discovery, fails to show sufficient evidence to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. *See* Cox v. Ky. Dep't of Transp., 53 F.3d 146, 149 (6th Cir. 1995). The trial court has no duty to search the entire case record to establish that it is bereft of a genuine issue of material fact. Street v. J.C. Bradford & Co., 886 F.2d 1472, 1476 (6th Cir. 1989). The nonmoving party has an affirmative duty to direct the court's attention to specific evidence upon which it seeks to rely. Al-Qudhai'een v. Am. W. Airlines, Inc., 267 F. Supp. 2d 841, 845 (S.D. Ohio 2003) (citing *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001)). The lack of such a response by the nonmoving party may result in an automatic grant of summary judgment. *Reeves v. Fox Television Network*, 983 F.

7

Supp. 703, 709 (N.D. Ohio 1997).

In reviewing summary judgment motions, a court must view all facts and inferences drawn therefrom in a light most favorable to the nonmoving party. *Pachla v. Saunders Sys., Inc.*, 899 F.2d 496, 498 (6th Cir. 1990). However, the Court does not weigh the evidence or make credibility determinations. *Joostberns v. United Parcel Services, Inc.*, 166 F. App'x 783, 787 (6th Cir. 2006). Moreover, the mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient; there must be evidence on which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). In other words, the court should determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id.* at 251.

**B.     Church's Conversion Claim**

It is not disputed that Church owns the gun at issue in this case. Church argues that Ohio Revised Code § 2923.163(B)[7] entitled Church to receive his gun from Mishic

---

[7] Ohio Revised Code § 2923.163(B) provides the following:

> If a law enforcement officer stops a person for any law enforcement purpose and the person voluntarily or pursuant to a request or demand of the officer surrenders a firearm to the officer . . . or if a law enforcement officer otherwise seizes a firearm from a person, all of the following apply:
>
> . . . . .
>
> (B) If the law enforcement officer does not return the firearm to the person at the termination of the stop or otherwise promptly return the firearm to the person after the seizure of the firearm, if a court finds that a law enforcement officer failed to return the firearm to the person

8

unconditionally upon Church's demand, and that Mishic committed conversion when he unlawfully deprived Church of his gun by declining to release it from the Property Unit. For the following reasons, the Court finds that Church has failed to show there is a genuine issue of whether Mishic converted Church's gun.

Conversion is "the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Joyce v. General Motors Corp.*, 49 Ohio St. 3d 93, 96, 551 N.E.2d 172, 175 (1990). Mishic argues that he could not have committed conversion because he never exercised dominion over Church's gun, but rather the City of Cleveland exercised dominion by way of the Property Unit; that any dominion he might have exercised over the gun was not wrongful; and that he is statutorily immune from Church's conversion claim pursuant to Ohio Revised Code § 2744.03(A)(6).[8] In support

---

> after the person has demanded the return of the firearm from the officer, and if the court orders a law enforcement officer to return the firearm to the person, in addition to any other relief ordered, the court also shall award reasonable costs and attorney's fees to the person who sought the order to return the firearm.

[8] Ohio Revised Code § 2744.03(A)(6) provides the following:

> In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:
>
> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
>
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

9

of his arguments, Mishic has produced evidence of the Property Unit's standard operating procedure for releasing firearms to their owners, and evidence that Church's gun was retained by the Property Unit pursuant to that standard operating procedure.

Church, on the other hand, has failed to produce any evidence supporting his allegation that Mishic exercised dominion over the gun. Church also has failed to produce sufficient evidence that any dominion that Mishic might have had over the gun was wrongful. Church seems to insists that Ohio Revised Code § 2923.163(B) required Mishic to release Church's gun from the Property Unity unconditionally upon demand, but this Court has already concluded in its prior Report and Recommendation, to which the District Judge agreed and Church did not object, that the statute expressly provides only that a court may award costs and attorney fees in addition to any other relief ordered if it finds that an officer failed to properly return a claimant's gun, and only after the court orders the officer to return the gun. (Report & Recommendation 10/26/11, Doc. No. 17; Mem. Op. 11/23/10, Doc. No. 20.) Moreover, although Church has offered as evidence a release request form from a Detective who requested that Church's gun be released, Church has failed to explain the relevance of that form to his conversion claim.

---

> (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term "shall" in a provision pertaining to an employee.

10

Church likewise has failed to show that there is a genuine question of whether Mishic is statutorily immune from Church's conversion claim. In a civil action brought against an employee of a political subdivision to recover damages for loss to property allegedly caused by any act or omission in connection with a governmental or proprietary function, the employee is immune to liability unless one of three exceptions are met: (1) the employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (2) the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (3) when civil liability is expressly imposed by a section of the Ohio Revised Code. Ohio Rev. Code § 2744.03(A)(6). Mishic is subject to this statutory immunity because, as a police officer, he is an employee of a political subdivision, and because police services are considered governmental functions. *See McCloud*, 72 Ohio App. 3d at 538, 595 N.E. 2d at 495. A political subdivision employee whose conduct at issue was performed while carrying out his official duties is presumptively immune from personal liability for that conduct under § 2744.03 unless one of the exceptions to immunity is established. *Cook v. Cincinnati*, 103 Ohio App. 3d 80, 90, 658 N.E.2d 814, 820-21 (1st Dist. 1996). Therefore, the plaintiff has the burden of proving that the political subdivision employee is not statutorily immune from liability. *See id.*, 658 N.E.2d at 820-21.

Mishic has produced evidence that he acted within the scope of his employment responsibilities and in good faith (i.e., pursuant to the Property Unit's standard operating procedure). Church alleges in response only that Mishic's conduct was manifestly outside the scope of his employment and provides no evidence to support this

11

allegation.[9] Mere allegations are not enough to overcome summary judgment. Moreover, Church has not argued that Ohio law expressly imposes civil liability on Mishic.

In short, Church has failed to set forth through competent and material evidence specific facts showing that there is a genuine issue for trial regarding his conversion claim against Mishic. Therefore, Mishic's Motion for Summary Judgment as it relates to Church's conversion claim should be granted.

### C. Church's § 1983 Claim

To state a cause of action under 42 U.S.C. § 1983,[10] a plaintiff must allege the deprivation of a right secured by the United States Constitution or a federal statute by a

---

[9] In his Brief in Opposition, Church quoted Ohio Revised Code § 2923.163(B) in a paragraph immediately following his allegation that Mishic acted outside the scope of his employment. (Pl.'s Br. Opp'n 4.) It is not clear whether Church is offering this statute as the basis for his allegation that Church acted outside the scope of his authority, as Church provides no explanation. Moreover, a plain reading of the statute indicates that it does not define when an officer acts outside the scope of his employment.

[10] 42 U.S.C. § 1983 provides the following:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

12

person who was acting under color of state law. *Romanski v. Detroit Entm't, L.L.C.*, 428 F.3d 629, 636 (6th Cir. 2005). Church alleges in his Complaint that Mishic violated § 1983 by depriving him of his "rights to carry a weapon" under the Second Amendment to the United States Constitution, and by depriving him of his property without due process under the Fifth and Fourteenth Amendments to the United States Constitution. Mishic, however, argues that he enjoys qualified immunity from Church's § 1983 claim. For the reasons set forth below, the Court finds that Church has failed to meet his burden to overcome summary judgment as to his § 1983 claim against Mishic.

In a lawsuit against a government official for an alleged violation of a constitutional right, the government official may claim qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). Qualified immunity is an affirmative defense that shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Barrett v. Steubenville City Schools*, 388 F.3d 967, 970 (6th Cir. 2004). The protection of qualified immunity applies regardless of whether the government official's conduct arises out of a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson v. Callahan*, 555 U.S. 223, ___, 129 S. Ct. 808, 815 (2009) (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)). Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the official asserting the defense is not entitled to qualified immunity. *Barrett*, 388 F.3d at 970. Whether an official is protected by qualified immunity is a question of law. *Id.*

Traditionally, a two-prong test has been used to determine whether a

government official enjoys the benefit of qualified immunity. *See Saucier*, 533 U.S. at 201. First, a court considers whether the facts alleged, and taken in the light most favorable to the plaintiff, show that the government official's conduct violated the plaintiff's rights. *Saucier*, 533 U.S. at 201. Second, the court considers whether that right was "clearly established." *Id.* For a right to be clearly established, the contours of the right must be sufficiently clear such that a reasonable official would understand that his conduct violates that right. *Binay v. Bettendorf*, 601 F.3d 640, 646-47 (6th Cir. 2010). Although it is often appropriate to apply this two-prong test in sequence, it is no longer mandatory. *Id.* at 647 (citing *Pearson*, 555 U.S. at ___, 129 S. Ct. at 818).

As an initial matter, it appears that Church has failed to show there is a genuine issue of whether Mishic violated § 1983 because Church appears to insists that he has sued Mishic in his official capacity.[11] Claims against government officials in their official capacities are actually claims against the government entity for whom the officials act. *Gean v. Hattaway*, 330 F.3d 758, 766 (6th Cir. 2005) (quoting *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)). If Church is claiming that Mishic violated § 1983 only in his official capacity, the claim is actually against the City and, therefore, Mishic cannot be liable.[12] However, even if Church were suing Mishic under § 1983 in his individual capacity, the Court finds that he has failed to show that there is a genuine

---

[11] Church declares in his Brief in Opposition that "Mishic is being sued as an officer under Ohio Revised Code § 2923.163(B)." (Pl.'s Br. Opp'n 5.)

[12] To the extent that this § 1983 claim implicates the City of Cleveland, it fails because the § 1983 claim against the City was dismissed pursuant to this Court's prior Report and Recommendation, to which the District Judge agreed and Church did not object. (Report & Recommendation 10/26/10, Doc. No. 17; Mem. Op. 11/23/10, Doc. No. 20.)

14

issue as to the § 1983 claim.

Church has failed to show there is a genuine issue of whether Mishic violated Church's rights under the Second Amendment because, although Mishic contends that the claim lacks merit, Church has failed to respond to Mishic's contention and does not even mention the Second Amendment claim in his Brief in Opposition. Furthermore, Church has failed to show there is a genuine issue of whether Mishic violated Church's due process rights under the Fifth Amendment because Mishic did not—indeed, could not have—violate those rights: the Fifth Amendment's Due Process Clause secures the right to due process from only the federal government, *Dusenbery v. United States*, 534 U.S. 161, 167 (2002), and Mishic is not a federal official.

For the following reasons, the Court finds that Church has failed to show there is a genuine issue of whether Mishic violated Church's due process rights under the Fourteenth Amendment, as well. The Fourteenth Amendment provides that "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. There are two types of due process—procedural and substantive. *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996). Mishic has produced with his Motion evidence of the Property Unit's standard operating procedure for releasing firearms to their owners, and evidence that Church's gun was retained by the Property Unit pursuant to that standard operating procedure. Based on that evidence, Mishic argues in his Motion that Church cannot show there is a genuine issue that Mishic knew or should have known that denying Church's request to release his gun would violate Church's due process rights—the second prong of the qualified immunity analysis.

In response, Church does not explain which type of due process Mishic allegedly violated, or how Mishic's conduct amounted to a deprivation of that right. Church only alleges that he *had* due process rights in relation to his gun, and that Mishic *violated* those rights when he declined to release Church's gun. The only evidence that Church has produced is a release request form that was submitted to the Property Unit by a Detective who apparently had been involved with investigating Church's criminal charge. Church has not, however, explained the relevance of the release request form to his § 1983 claim. Mishic, on the other hand, has produced evidence through the Property Unit's standard operating procedure that indicates that the Detective's release request was not dispositive in the determination of whether to release Church's gun.

Church seems to argue that the Property Unit's standard operating procedure is invalid pursuant to the Ohio Supreme Court case *Cleveland v. State*, No. 2009-2280, 2010 WL 5392919 (Ohio Dec. 29, 2010). In *Cleveland*, the City of Cleveland challenged an Ohio statute that provided that only federal or state laws could restrict an Ohioan's right to bear arms. *Cleveland*, 2010 WL 5392919, at *1-2. The City sought a declaratory judgment stating that the statute violated the City's home-rule authority under the Ohio Constitution to pass its own laws restricting its citizens' right to bear arms. *Id.* The court held that the statute did not violate the Ohio Constitution, that the statute displaced municipal firearms ordinances, and that the statute's authorization for an award of attorney's fees and costs did not violate the separation of powers doctrine. *Id.* at *8.

Church has failed to explained how the decision in *Cleveland* bears on his § 1983 claim, and the Court will not speculate as to Church's purported argument. *See*

16

*McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."); *Meridia Prods. Liab. Litig. v. Abbott Labs.*, 447 F.3d 861, 868 (6th Cir. 2006).

In sum, Church has failed to set forth through competent and material evidence specific facts showing that there is a genuine issue for trial regarding his § 1983 claim against Mishic.  Therefore, Mishic's Motion to Dismiss as it relates to Church's § 1983 claim should be granted.

### III.  CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that Defendant Mishic's Motion for Summary Judgment be GRANTED.

s/ *Nancy A. Vecchiarelli*
Nancy A. Vecchiarelli
U.S. MAGISTRATE JUDGE

Date: February 9, 2011

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

17